**S.I.R.P.R.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
MICHIGAN GRAND RAPIDS DIVISION**

**FILED - GR**
February 23, 2022 4:16 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JW / 2-24

AUGUSTINE 'AUSTIN' CHENGE.,
    *Plaintiff,*

v.

CENTERS FOR DISEASE CONTROL
AND PREVENTION, ROCHELLE P.
WALENSKY, in her capacity as
Director of the CDC, SHERRI A BERGER,
in her capacity as Chief of Staff for the CDC,
UNITED STATES DEPARTMENTOF HEALTH
AND HUMAN SERVICES,
XAVIER BECERRA, in his capacity as
Secretary of HHS, UNITED
STATES  DEPARTMENT OF TRANSPORTATION,
PETE BUTTIGIEG, in his capacity as Secretary of Transportation,
JOSEPH BIDEN, in his official capacity as President of the
The UNITED STATES OF AMERICA, and
UNITED STATES OF AMERICA
    *Defendants.*

CIVIL ACTION NO. _____

NO JURY TRIAL.

**1:22-cv-165**

**Hala Y. Jarbou
U.S. District Judge**

## INTRODUCTION

The Plaintiff Augustine 'Austin' Chenge seeks relief from this Court against the Defendants United States of America, Centers for Disease Control and Prevention (the "CDC"), Rochelle P. Walensky (in her capacity as Director of the CDC), Sherri A. Berger(in her capacity as Chief of Staff of the CDC), United States Department of Transportation ("USDOT") Pete Buttigieg (in his capacity as Secretary of United States Secretary of Transportation, United States Department of Health and Human Services ("HHS"), Xavier Becerra (in his capacity as Secretary of HHS) and Joseph Biden (in his capacity as President of the United States of America, (collectively, the "Defendants"). Plaintiff hereby challenges the constitutionality and statutory authority of Defendants' mandate requiring masks to be worn while on commercial

1

airlines, conveyances, andat transportation hubs (the "Mask Mandate" or "Order"),[1] and Plaintiff further challenges the constitutionality and statutory authority of Defendants' to mandate a Negative COVID-19 Test Result or documentation of recovery from Covid for international travel on commercial airlines, conveyances, and at transportation hubs,[2] and would show the Court as follows:

## PARTIES

1.      Plaintiff Austin Chenge is an individual who resides in Michigan within the boundaries of the United States District Court for the Western District of Michigan. His address is 1971 E. Beltline Ave, STE 106, Grand Rapids. MI 49525. Tel: 408 708 6715. Email: Hello@MrChenge.com.

2.      Defendant United States of America is a government entity whose address is,

   Office of the Attorney General, Department of Justice, 950 Pennsylvania Avenue

   NW, Washington, D.C.  20530. Tel: 202-514-2000

3.      Defendant CDC is an agency of the United States located within HHS with an address at 1600 CLIFTON ROAD, ATLANTA, GEORGIA. GA. 30329-4027. Tel: 800-232-4636.

4.      Defendant Rochelle P. Walensky is the Director of the CDC and, pursuant to 42 CFR 70.2, is charged with determining whether measures taken by a State's health authorities are insufficient to prevent the interstate spread of communicable diseases. She is sued in her official capacity. The Director of the CDC has the following address; Centre For Disease Control and Prevention, Director of the CDC, 1600 CLIFTON ROAD, ATLANTA, GEORGIA. GA. 30329-

---

[1] *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021), available at https://www.govinfo.gov/content/pkg/FR- 2021-02-03/pdf/2021-02340.pdf.

[2] *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021), available at https://www.govinfo.gov/content/pkg/FR- 2021-02-03/pdf/2021-02340.pdf.

4027. Tel: 800-232-4636.

5.      Defendant Sherri A. Berger is the Chief of Staff for the CDC and is responsible for

the challenged agency action taken pursuant to the Mask Mandate. She is sued in her official

capacity. Chief of Staff for the CDC, Centre For Disease Control and Prevention, Director of

the CDC, 1600 CLIFTON ROAD, ATLANTA, GEORGIA. GA. 30329-4027. Tel: 800-232-

4636.

6.      Defendant HHS is an Agency of the United States with an address at; 200

        INDEPENDENCE AVE, S.W, WASHINGTON, DC. 20201. Tel: 877-696-6775.

7.      Defendant Xavier Becerra is the agency head of HHS and is sued in his official

capacity with address at; Secretary of the HHS, 200 INDEPENDENCE AVE, S.W,

WASHINGTON, DC. 20201. Tel: 877-696-6775

8.      Defendant USDOT is an Agency of the United States with an address at 1200

NEW JERSEY AVENUE, SE. WASHINGTON DC. 20590. Tel: 855-368-4200.

9.      Defendant Pete Buttigieg, is the Agency head of USDOT and is sued in his

official capacity, with an address at Secretary of the US Department of Transportation, 1200

NEW JERSEY AVENUE, SE. WASHINGTON DC. 20590. Tel: 855-368-4200.

10.      Defendant JOSEPH BIDEN is the President of the United States of America and

is sued in his official capacity, with an address at 1600 Pennsylvania Avenue NW, Washington,

DC 20500. Tel: 202 456 1111.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises under the United State Constitution; 28 U.S.C. § 1346(a)(2), because this suit constitutes a civil action against an executive department of the United States; and 5 U.S.C. §§ 702 and 706 (providing for judicial review of agency action), because this matter involves questions arising under the U.S. Constitution and the Administrative Procedure Act.

12.     This Court has the authority to grant declaratory relief under 28 U.S.C. § 2201 and preliminary and permanent injunctive relief under 28 U.S.C. § 2202.

13.     Venue is proper within this judicial district and division pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions asserted by Plaintiffs arose within this judicial district. Venue is proper in the Grand Rapids Division of the Western District of Michigan pursuant to 28 U.S.C. § 124(a)(2).

## STATEMENT OF FACTS

### A.     *The Mask Mandate Orders*

Defendant Biden issued Jan. 21, 2021, "Executive Or-der Promoting COVID-19 Safety in Domestic & International Travel." E.O. 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021).

It "is the policy of my Administration to implement these public health measures consistent with CDC guidelines on public modes of transpor-tation and at ports of entry to the United States." Heads of agencies "shall immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC

4

guidelines in or on: (i) airports; (ii) commercial aircraft; (iii) trains; (iv) public maritime vessels, including ferries; (v) intercity bus services; and (vi) all forms of public transportation as defined in section 5302 of title 49, United States Code."

14.     This above executive order set in motion the orders issued by Defendants CDC, HHS, with the USDOT deferring to Airlines on Mask Mandates.

15.     On January 29, 2021, Defendant Berger issued the Mask Mandate requiring the wearing of masks by people on public transportation conveyances or on the premises of transportation hubs. The Order became effective on February 3, 2021, upon its publication in the Federal Register, and remains in effect "unless modified or rescinded" or "until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Act (42 U.S.C. 247d) that a public health emergency exists." 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

16.     The Mask Mandate requires people traveling on conveyances into and within the United States to wear masks over the nose and mouth.

17.     People are also required to wear masks at transportations hubs.

18.     A "conveyance" is defined as "an aircraft, train, road vehicle, vessel . . . or other means of transport, including military," and also includes rideshare arrangements.

19.     A "transportation hub" is defined as "any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States."

20.     A "mask" is defined as "a material covering the nose and mouth of the wearer,

excluding face shields."

21.     The Order requires conveyance operators and transportation hub operators to enforce it.

22.     The stated objective of the Mask Mandate is "[m]itigating the further introduction, transmission, and spread of COVID-19 into the United States and from one state or territory into any other state or territory[.]".

23.     In particular, the Order states that "[m]asks help prevent people who have COVID-19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others."

24.     However, the Order provides no findings that show masks have limited the interstate spread of COVID-19 through conveyances and transportation hubs.

25.     Additionally, the Mask Mandate is not limited to individuals who have been infected or exposed to COVID-19.

26.     The Mask Mandate has limited exemptions, such as children under two years and people who cannot wear a mask because of a disability. *Id.* at 8027-28. The Mask Mandate also does not apply in a few limited circumstances, such as when a person is eating, drinking, taking medication, when wearing oxygen masks on airplanes is required, or when unconscious or incapacitated.

27.     The Mask Mandate states that it was not subject to notice and comment and a delay in effective date because "good cause" existed to forgo it.

28.     Violating the Mask Mandate carries criminal penalties: "While this Order may be enforced and CDC reserves the right to enforce through criminal penalties, CDC does not intend to rely primarily on these criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance as well as support from other federal agencies in implementing

additional civil measures enforcing the provisions of this Order, to the extent permitted by law and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel)."

29.   In June 2021, the CDC announced that it will not enforce wearing a mask in outdoor areas of conveyances and transportation hubs. *See* Centers for Disease Control and Prevention, *Summary of Recent Changes*, https://www.cdc.gov/coronavirus/2019-ncov/travelers/face-masks-public-transportation.html (last accessed February 15, 2022).

### B. COVID-19 Testing Requirement for International Travel

30.   Defendant Berger of The Centers for Disease Control and Prevention (CDC) within the Department of Health and Human Services (HHS) issued an Order on January 12, 2021 (effective January 26, 2021) requiring proof of a negative COVID-19 test (Covid-19 Testing Order) or documentation of having recovered from COVID-19 for all air passengers arriving from a foreign country to the US. The Covid-19 Testing Order remains in effect "unless modified or rescinded" or "until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Act (42 U.S.C. 247d) that a public health emergency exists." 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021).

31.   The stated objective of the Covid-19 Testing Order includes;

- Preserving human life;

- Preventing the further introduction, transmission, and spread of the virus that causes COVID-19 into the United States, including new virus variants;

- Preserving the health and safety of crew members, passengers, airport personnel, and communities; and

- Preserving hospital, healthcare, and emergency response resources within the United States.

32.    The COVID-19 Testing Order requires people traveling on all airlines or other aircraft arriving into the United States to have a negative Covid-19 Test Result or documentation of recovery from Covid-19.

33.    Regardless of the Covid-19 Test Result or documentation of recovery from the Covid-19 Test, people (2 years old and above) are still required to wear masks.

34.    Failure to follow this Covid-19 Testing Order can result in denial of boarding, removal from the vessel, or other severe penalties.

35.    There are few exceptions to this and the include;

- Crew members of airlines or other aircraft operators provided that they follow industry standard protocols for the prevention of COVID-19 as set forth in relevant Safety Alerts for Operators (SAFOs) issued by the Federal Aviation Administration (FAA).5

- Airlines or other aircraft operators transporting passengers with COVID-19 pursuant to CDC authorization and in accordance with CDC guidance.6

- Federal law enforcement personnel on official orders who are traveling for the purpose of carrying out a law enforcement function, provided they are covered under an occupational health and safety program in accordance with CDC guidance. Those traveling for training or other business purposes remain subject to the requirements of this Order.

- U.S. Department of Defense (DOD) personnel, including military personnel and civilian employees, dependents, contractors (including whole aircraft charter operators), and other U.S. government employees when

traveling on DOD assets, provided that such individuals are under competent military or U.S government travel orders and observing DOD precautions to prevent the transmission of COVID-19 as set forth in Force Protection Guidance Supplement 14 - Department of Defense Guidance for Personnel Traveling During the Coronavirus Disease 2019 Pandemic (December 29, 2020) including its testing guidance.

• Individuals and organizations for which the issuance of a humanitarian exemption is necessary based on both 1) exigent circumstances where emergency travel is required to preserve health and safety (e.g., emergency medical evacuations) and 2) where pre-departure testing cannot be accessed or completed before travel. Additional conditions may be placed on those granted such exemptions, including but not limited to, observing precautions during travel, providing consent to post-arrival testing, and/or self-quarantine after arrival in the United States, as may be directed by federal, state, territorial, tribal or local public health authorities to reduce the risk of transmission or spread.

36.    However, the COVID-19 Testing Order provides no findings that show COVID-19 Testing Order has limited the spread of COVID-19 through conveyances and transportation hubs.

37.    Additionally, Defendant has provided no findings that show COVID-19 Testing Order, in light of the now lesser Omicron variant, is still appropriate action, for US citizens like Plaintiff.

### C.    *Plaintiffs' Standing*

38.    Plaintiff Austin Chenge lives within the boundaries of the United States District Court for the Western District of Michigan and is a Gubernatorial Candidate in the State of Michigan for the 2022 election.

39.    Plaintiff frequently travels across the State of Michigan to meet with residents of various counties. He averages 11,000 miles in a few weeks. All commercial airlines in Michigan are subject to the Order.

40.    Plaintiff also travels interstate within the United States and internationally via commercial airlines subject to the Order. His trips include campaign trips as well as personal travel to visit family in England, Great Britain, and West Africa.

41.    Plaintiff does not fall into any of the categories of people exempt from the Mask Mandate and is required by the Order to wear a face-covering while on flights and at airports.

42.    Plaintiff also does not fall into any of the categories of people exempt from the COVID-19 Testing Order.

43.    Plaintiff would choose not to wear a mask while at an airport or on a flight if it was not required.

44.    Plaintiff would also choose not to Test for COVID-19 while traveling back into the United States if it was not required.

45.    Plaintiff's nearest major airport is the Gerald R. Ford International Airport ("GRR"). When he travels, he flies into or out of GRR almost exclusively.

46.    GRR is located primarily in Kent County, Michigan.

47.    GRR is currently enforcing the Mask Mandate, and GRR and Airlines flying back to GRR are also currently enforcing the COVID-19 Testing Order.

48.    Plaintiff Austin Chenge is a party directly regulated by the Mask Mandates and the

COVID-19 Testing Order.

## EXHAUSTION OF OTHER REMEDIES

49.     Without any remedies available, Plaintiff Austin Chenge has engaged in extremely stressful and difficult methods of coping with the Mask Mandates and COVID-19 Testing Order.

50.     Plaintiff has traveled via road in his private car more than 25,000 miles to all 83 counties in the State of Michigan.

51.     Plaintiff would not be allowed to fly without a Mask.

52.     Plaintiff has avoided visiting family overseas when possible but circumstances sometimes make this impossible.

53.     Plaintiff would not be allowed to fly to the United States without a Negative COVID-19 Test or documentation of COVID-19 recovery.

54.     Plaintiff would not be allowed to fly internationally to and from the United States without a Mask even if Plaintiff has Negative COVID-19 Test or documentation of COVID-19 Recovery.

55.     In short, Plaintiff Austin Chenge has no plain, speedy, and adequate remedy at law to prevent the Defendants from enforcing the requirement to have a Negative COVID-19 test or from enforcing the Mask Mandates.

## COUNT I

### AGENCY ACTION IS NOT IN ACCORDANCE WITH
### LAW AND IS 'ULTRA VIRES'
### (Violation of the Administrative Procedure Act)

56.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully

herein.

57.     Under the Administrative Procedure Act (the "APA"), a court must "hold unlawful

and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . .

authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

58.     The Mask Mandate and COVID-19 Testing Order purport to derive their statutory and

regulatory authority from 42 U.S.C. § 264, 42 C.F.R. §§ 70.2 (the regulation

implementing § 264), 71.31(b), 71.32(b).

59.     The Mask Mandate and/or COVID-19 Testing Order are in excess of that authority

in a number of ways.

60.     First, none of these statutes or regulations authorize the CDC to make or enforce

regulations that are an across-the-board preventative measure against people that may or may

not carry infectious disease. Such a broad reading of the statute effectively creates a general

federal police power." *Skyworks, Ltd. v. CDC*, 524 F. Supp. 3d 745, 758 (N.D. Ohio March 10,

2021).

61.     Second, Sections 264 and 70.2 require the CDC to act only once it "determines that

the measures taken by health authorities of any State . . . are insufficient to prevent the spread of

any of the communicable diseases from such State . . . to any other State." 42 C.F.R. § 70.2. The

CDC made no sufficient findings on this point.

62.     Third,  Section 264(a) grants the CDC the authority to "make and enforce such

regulations as in his judgment are necessary to prevent the introduction, transmission, or spread

of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession", but these powers are not unbounded.

63.     Fourth, Defendants rely Section 319 of the Public Health Service (PHS) Act (42 U.S.C. 247d). However, while the Statute gives the Defendants authority during public health emergencies, such authority is not without certain constraints, and is subject to Judicial scrutiny, especially when the wording of the Section is closely examined.

64.     Scrutiny must therefore be given to the provisions of the Section, which states;

 If the Secretary determines, after consultation with such public health officials as may be necessary, that—

- a *disease or disorder presents **a public health emergency***; or

- a public health emergency, including ***significant outbreaks of infectious diseases*** or bioterrorist attacks, otherwise exists,

>       the *Secretary may take **such action as may be appropriate*** to respond to the public health emergency, including making grants, providing awards for expenses, and entering into contracts and conducting and supporting investigations into the cause, treatment, or prevention of a disease or disorder as described in paragraphs (1) and (2). Any such determination of a public health emergency terminates upon the Secretary declaring that the emergency no longer exists, or upon the expiration of the 90-day period beginning on the date on which the determination is made by the Secretary, whichever occurs first...

65.     Undoubtedly, COVID-19 was a ***significant outbreak of infectious disease*** and presented a ***public health emergency***, requiring an emergency response to mitigate or prevent the spread of a then-unknown disease.

66.     However, an emergency is one precisely because it requires ***urgent intervention to prevent the worsening of a situation***.

67.     Defendant CDC agrees that the subsequent ***Omicron variant of the COVID-19 causes less severe disease*** than infection with prior variants.[3]

68.     Thus, the lesser Omicron variant of the COVID-19 could not be a significant outbreak of an infectious disease if it is not worsening the initial COVID-19 disease outbreak.

69.     Scrutiny must therefore be given to whether the actions or continued actions of the Defendants, such as the Mask Mandate for interstate travel and/or the Mask Mandate for international travel and/or the COVID-19 Testing Order are still '***appropriate actions*****'** under the Statute.

70.     While 319 gives Defendant the authority during a Public Health Emergency, the wording of the Statute clearly limits the actions of the Defendants to '***actions that may be appropriate*****'**.

71.     Congress clearly intended for every action taken by Defendants to be subject to judicial scrutiny.

72.     This implies that actions and/or continuous actions taken by the Defendant that may have been appropriate at the time of the initial outbreak of the COVID-19 could be determined by a Court to no longer be appropriate when applied to the now lesser Omicron variant.

73.     Defendant has failed to show that its actions and/or continued actions particularly its Mask Mandate for interstate travel and/or its Mask Mandate for international travel and/or the COVID-19 Testing Order are still ***appropriate actions*** under the now lesser Omicron variant.

---

[3] CDC. 'Omicron Variant: What You Need To Know'. Updated Feb 2, 2022. (https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html#print) Accessed Feb 21, 2022

74.     In short, Defendants have failed to show that alternative means to the Mask Mandates for interstate travel and/or Mask Mandate for international travel and/or COVID-19 Testing Order have failed to be *appropriate actions* under a now lesser Omicron variant.

## COUNT 2
## DEFENDANTS' ACTION VIOLATES
## CONSTITUTIONAL RIGHTS AND FREEDOMS
### (Violation of Due Process)

75.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

76.     Nothing in the Statute gives Defendants the authority to *'Perpetually subvert Constitutional Rights and Freedoms'* even when Defendants' actions could not be shown to still be appropriate action, or even when Defendants have failed to show that alternative actions are less appropriate, under a public health emergency, as intended by Congress.

77.     The individual's right to liberty, protected by the Fifth and Fourteenth Amendments, constrains the Defendants' options especially when nothing in the Statute and/or regulations themselves (both foreign and interstate) *appropriately* requires persons to submit to a bodily intrusion or be refused to board a vessel back to the United States.

78.     This is tantamount to coercing a US citizen who is trying to return home to the United States into giving up their constitutional rights and freedoms, and the right to due process or be denied access back into the United States, under a now progressively lesser variant that CDC itself has admitted[4], without Defendant showing that alternative means have proven to be less effective against a now lesser Omicron variant.

79.     Further, the characteristics of the particular disease should be relevant and/or

---

[4] CDC, 'Omnicron Variant: What You Need To Know'. Updated Feb 2, 2022. (https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html#print) Accessed Feb 21, 2022

proportionate to the degree of deprivation of the liberty interest when combatting its spread.

80.     Consideration should therefore be given to the gravity and circumstances of the outbreak and/or a subsequent lesser variant, the new disease or lesser variant characteristics, the availability of alternative control measures, and the characteristics of the individual in question.

81.     Depriving a US Citizen of returning home without recourse, solely on the basis that they have no Negative COVID-19 Test Result and/or that they have no Mask, which on their own are not proof that they are infected with an infectious disease, especially for a now lesser Omicron variant is a violation of due process.

82.     Surely, due process protections exist to ensure that individuals are not deprived of their liberty mistakenly or arbitrarily.

<u>COUNT 3</u>

**AGENCY ACTION VIOLATES THE NONDELEGATION DOCTRINE**
**(Violation of U.S. Const. Art. I, § 1)**

a.   Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

b.   Article I, Section I of the U.S. Constitutions says, "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." In addition to the Mask Mandate for interstate travel and/or the Mask Mandate for international travel and/or COVID-19 Testing Order exceeding the authority granted to the CDC under 42 U.S.C. § 264 and the relevant regulations, it also constitutes an unconstitutional delegation of legislative power to the CDC.

c.   In order to comply with the nondelegation doctrine, a statute must: (1) delineate a general policy; (2) the agency to apply it; and (3) the boundaries of the delegated authority. *See Mistretta v. United States*, 488 U.S.

16

361, 372-73 (1989). The boundaries of the delegated authority must meaningfully constrain the Executive branch's discretion.

d.      42 U.S.C. § 264 does not provide adequate boundaries that meaningfully constrain Defendants' authority.

e.      This has created ambiguity around the Statute and thus should be construed to avoid conflicting with provisions of the Constitution[5]. (See Skilling v. United States, 561 U.S. 358, 405–06, 423, 427 (2010)).

f.      As a result of the ambiguity, Defendants have taken it upon themselves to take actions that perpetually violate constitutional rights and freedoms where congress has not expressly authorized it to do so. (See Kent v. Dulles, 357 U.S. 116, 122–23, 130 (1958)).

g.      Accordingly, it violates the nondelegation doctrine.

## INJUNCTIVE RELIEF ALLEGATIONS

h.  Plaintiff incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

i.  Plaintiff Austin Chenge alleges that both on its face and as applied, the Mask Mandate for interstate and/or international travel violates his constitutional rights and his right to be free from unlawful regulations.

j.  Plaintiff Austin Chenge further alleges that both on its face and as applied, the COVID-19 Testing Order violates his constitutional rights and his

---

[5] Skilling v. United States, 561 U.S. 358, 405–06, 423, 427 (2010)," An interpretation should not violate the Constitution".

right to be free from unlawful regulations.

k.  Plaintiff Austin Chenge alleges that both on its face and as applied, the Mask Mandate for interstate and/or international travel violates his constitutional freedom and his right to due process.

l.  Plaintiff Austin Chenge further alleges that both on its face and as applied, the COVID-19 Testing Order violates his constitutional freedom and his right to due process.

m. Plaintiff Austin Chenge will be irreparably harmed unless this Court enjoin Defendants  from enforcing the Mask Mandate for interstate and/or international travel.

n.  Further, Plaintiff Austin Chenge will be irreparably harmed unless this Court enjoin Defendants from enforcing the COVID-19 Testing Order on US Citizens like the Plaintiff.

o.  Plaintiff Austin Chenge has no plain, speedy, and adequate remedy at law to prevent  the Defendants from enforcing the Mask Mandate for interstate and/or international travel.

p.  Plaintiff Austin Chenge has no plain, speedy, and adequate remedy at law to prevent Defendants from enforcing the COVID-19 Testing Order.

q.  If not enjoined by this Court, Defendants will continue to enforce  the Mask  Mandate for interstate travel and/or international travel in violation of Plaintiff Austin Chenge's freedoms and rights.

r.  If not enjoined by this Court, Defendants will continue to enforce  the  COVID-19 Testing Order in violation of freedoms and rights of US Citizen Plaintiffs like Austin Chenge.

s.   Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

t.   Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fullyherein.

u.   An actual and substantial controversy exists between Plaintiff and Defendants as to his legal rights and duties with respect to whether the Mask Mandate for interstate travel and/or the Mask Mandate for international travel and/or COVID-19 Testing Order exceeds the CDC's statutory authority and/or violates the United States Constitution.

v.   The case is presently justiciable because the Mask Mandate for interstate travel and/or the Mask Mandate for international travel and/or COVID-19 Testing Order applies to Plaintiff Austin Chenge on its face, and Plaintiff would face sanctions if he did not comply.

w.   Declaratory relief is therefore appropriate to resolve this controversy.

## PRAYER FOR RELIEF

First, Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the Mask Mandate for interstate travel and/or the Mask Mandate for international travel is beyond the CDC's statutory authority or is unconstitutional.

Second, Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment also be issued by this Court, declaring that in light of now lesser COVID-19 variants, a continued and/or perpetual Mask Mandate for interstate travel and/or a

Mask Mandate for international travel, that the Defendant has failed to show is still ***appropriate action***, is beyond the CDC's statutory authority or is unconstitutional.

Third, Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment also be issued by this Court, declaring that in light of now lesser COVID-19 variants, a continued and/or perpetual Mask Mandate for interstate travel and/or a Mask Mandate for international travel, that the Defendant has failed to show an alternative action that does not violate constitutional rights and freedoms has failed to be appropriate, is beyond the CDC's statutory authority or is unconstitutional.

Fourth, Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the COVID-19 Testing Order is beyond the CDC's statutory authority or is unconstitutional.

Fifth, Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment also be issued by this Court, declaring that in light of now lesser COVID-19 variants, a continued and/or perpetual COVID-19 Testing Order, that the Defendant has failed to show is still ***appropriate action,*** and which was intended for the initial more severe COVID-19, is beyond the CDC's statutory authority or is unconstitutional.

Sixth, Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment also be issued by this Court, declaring that Defendant has provided no findings that show that an alternative action that does not violate Constitutional Rights and Freedoms of US citizens like Plaintiff, has failed to be appropriate, in light of the now lesser Omicron variant, is thus beyond the CDC's statutory authority or is unconstitutional.

Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the Mask Mandate for interstate travel and/or the Mask Mandate for

international travel.

Additionally, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the COVID-19 Testing Order on US Citizens like Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants and that the Court:

(1)     Declare that the Mask Mandate for interstate travel is beyond the CDC's statutory authority because 42 U.S.C. § 264 does not authorize it;

(2)     Declare that the Mask Mandate for international travel is beyond the CDC's statutory authority because 42 U.S.C. § 264 does not authorize it;

(3)     Declare that the COVID-19 Testing Order is beyond the CDC's statutory authority because 42 U.S.C. § 264 does not authorize it;

(4)     Declare that the Mask Mandate for interstate travel is invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is in excess of statutory authority;

(5)     Declare that the Mask Mandate for international travel is invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is in excess of statutory authority;

(6)     Declare that the COVID-19 Testing Order is invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is in excess of statutory authority;

(7)     Declare that Defendant has provided no findings that show the Mask Mandate for interstate travel and/or international travel, in light of the now lesser Omicron variant, is still appropriate action, necessary for the continued and perpetual suspension of Constitutional Rights and Freedoms of US citizens like Plaintiff, thus is in violation of the U.S. Constitution.

(8)     Declare that Defendant has provided no findings that show an alternative action to the Mask Mandate for interstate travel and/or international travel is not appropriate and/or has failed, in light of the now lesser Omicron variant, and thus is in violation of the U.S. Constitution.

(9)     Declare that Defendant has provided no findings that show COVID-19 Testing Order, in light of the now lesser Omicron variant, is still appropriate action, necessary for the continued and perpetual suspension of Constitutional Rights and Freedoms of US citizens like Plaintiff, and thus is in violation of the U.S. Constitution.

(10)    Declare that the Mask Mandate for interstate and/or international travel is a violation of the separation of powers, specifically the nondelegation doctrine of the U.S. Constitution;

(11)    Declare that the COVID-19 Testing Order is a violation of the separation of powers, specifically the nondelegation doctrine of the U.S. Constitution;

(12)    Hold unlawful and set aside the Mask Mandate for interstate travel;

(13)    Hold unlawful and set aside the Mask Mandate for international travel;

(14)    Hold unlawful and set aside the COVID-19 Testing Order for US Citizens;

(15)    Issue a preliminary injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing the Mask Mandate for interstate travel and/or international travel;

(16)    Issue a preliminary injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing the COVID-19 Testing Order on US Citizens like Plaintiff;

(17)    Issue a permanent injunction against the Defendants, as well as all agents,

administrators, employees, or other persons acting on behalf of the Defendants,

from enforcing the Mask Mandate for interstate travel and/or international travel;

(18)     Issue a permanent injunction against the Defendants, as well as all agents,

administrators, employees, or other persons acting on behalf of the Defendants,

from enforcing the COVID-19 Testing Order against US Citizens like Plaintiff;

(19)     Grant such other and further relief as the Court deems equitable, just, and proper.


Respectfully submitted,

*/s/Augustine 'Austin' Chenge*
*(02/23/2022)*
AUGUSTINE 'AUSTIN' CHENGE
Hello@MrChenge.com
1971 E Beltline Ave
Ste 106,
Grand Rapids, Michigan 49525